513 S.E.2d 369

**Henry C. CHAMBERS, Appellant,**

v.

**Sumner PINGREE, Jr., Respondent.**

**No. 2937.**

Court of Appeals of South Carolina.

Heard Jan. 12, 1999.
Decided Feb. 1, 1999.
Rehearing Denied May 8, 1999.

A. Parker Barnes, Jr., of A. Parker Barnes, Jr. & Associates, of Beaufort; and James B. Richardson, Jr., of Svalina, Richardson & Larson, of Columbia, for Appellant.

James H. Moss and H. Fred Kuhn, both of Moss & Kuhn, of Beaufort, for Respondent.

ANDERSON, Judge:

Henry C. Chambers filed this action asserting breach of contract and estoppel against Sumner Pingree, Jr. for recovery of a real estate commission. Pingree counterclaimed for recovery on a promissory note. The circuit court granted Pingree's motion for summary judgment on the counterclaim. Chambers appeals. We reverse and remand.

## FACTUAL/PROCEDURAL BACKGROUND

On October 16, 1986, Pingree granted Chambers an exclusive agency to sell a 5,000 acre tract of property in Beaufort County known as Brays Island. The agreement called for Chambers to receive a 9% sales commission.

On March 25, 1987, Brays Island Company, Inc., The Lawrence Group, and Chambers entered into an "Incentive Agreement," which provided The Lawrence Group and Chambers were to act as promoters in the development and sale of a real estate project called Brays Island Plantation. The agreement was signed by Pingree, as chairman of Brays Island Company, Inc.; George W. Flynt, on behalf of The Lawrence Group; and Chambers. Under this agreement Pingree, who would be funding the preliminary phases of the project, was to be repaid the estimated $765,000 that he would be advancing for the project, plus 10% of that amount. After repayment to Pingree and the payment of other obligations, the remainder

(the "profit") was to be distributed 20% to Chambers and 20% to The Lawrence Group. Brays Island Company, Inc. was to retain 60% of the profit "for the account of its shareholder." The Incentive Agreement was amended on April 12, 1989 (to define "profit" as the amount remaining after various land, development, operating, and other expenditures) and again on December 1, 1989 (to add Flynt as a "promoter"). In May of 1989, The Lawrence Group assigned its interest to The Plantation Group, Ltd. The corporation eventually terminated the contract between it and The Lawrence Group.

On October 4, 1988, Pingree and Chambers executed a "Memorandum of Agreement between Sumner Pingree, Jr. and Henry C. Chambers" (the "Commission Agreement") which stated Pingree agreed to pay Chambers a real estate commission of $1,080,000 for negotiating the sale of Brays Island Plantation for $12,000,000. It was noted in the Commission Agreement that although Pingree was transferring the property to his wholly-owned corporation, Brays Island Company, Inc., for a recited consideration of $12,000,000, he would not actually receive any money until the lots were sold. Pingree claimed he had expended $3,000,000 in development costs in order to effect the sale of the property. Pingree agreed to pay Chambers 9% from the sale of each lot after he recovered his development expenditures and the interest thereon. Chambers acknowledged receipt of $38,000 to be set off against the first commission due. On January 10, 1989, Pingree effected the sale of the tract to Brays Island Company, Inc. for the stated sum of $12,000,000.

In February of 1989, the parties executed another "Memorandum of Agreement." After reciting many of the same terms as the 1988 agreement, including the outstanding commission of $1,080,000 due to Chambers, the parties agreed the unpaid commission balance would draw 10% interest. However, the agreement also provided "[t]he commission is payable only if, as and when Pingree is actually paid [the purchase price] for the Plantation by [Brays Island] Company." The parties acknowledged $40,000 from each sale was to be earmarked to pay the development loan from South Carolina National Bank.

Three months later, on May 1, 1989, Chambers executed a promissory note payable to Pingree for $250,000. The note, due in full by the first business day following January 1, 1995, provided for interest at the rate of 10% per year. The note was to be paid in full from the share of net profits from the operation of Brays Island Plantation that were payable to Chambers as set forth in the Incentive Agreements of 1987 and 1989. In addition, the note referenced the parties' Commission Agreement and its provision for interest to accrue on the unpaid commission. The note provided, "It is now agreed between the parties that all such interest payments due by Pingree to Chambers on that commission, as that interest becomes payable, will be applied to payment of this Note." An additional $80,000 was added to the May 1, 1989 note, increasing it to $330,000, when $40,000 was given to Chambers on October 11, 1989 and again on May 14, 1990.

In 1994, Chambers filed this action seeking recovery of his unpaid commission.[1] Pingree answered, denying the balance of the commission was due "as commissions were to be paid only as received by Pingree."[2] Pingree counterclaimed based on the promissory note; he then moved for summary judgment. In an order dated August 12, 1996, the circuit court denied the motion as to the breach of contract cause of action, but granted Pingree summary judgment on the estoppel claim. The circuit court did not address the counterclaim in this order. However, in a separate order dealing with the action on the Incentive Agreement, which appears to be dated August 1, 1996, the court denied summary judgment on the promissory note, stating, "Since the Plaintiff, if successful, could set off any amount he owed on the note against any verdict he might get, I refuse the motion."

Pingree moved for reconsideration of the ruling as to the counterclaim, alleging, in part, that he was entitled to judgment on the note "in order that interest and costs may run thereon from the date of judgment." On January 9, 1997, the court granted Pingree's motion for summary judgment on his

---

1. Chambers filed a second action involving the Incentive Agreement.

2. As to the Incentive Agreement, Pingree asserted the development had barely avoided foreclosure and no "profit" had been earned as that term was defined in the Incentive Agreement.

counterclaim, relying upon *SSI Medical Services, Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789 (1990). The court declared its order was "therefore amended to grant judgment on the note and all interest due thereon as of August 1, 1996, *nunc pro tunc.*" However, the court further ordered that "no execution in aid of collection of such note may ·be made until the counterclaim is fully adjudicated."

Chambers moved for reconsideration, arguing he was entitled to credits for interest which Pingree wrongfully failed to apply against the balance of the note. The circuit court upheld its grant of summary judgment, but stated a trial would be necessary to determine the amount due. The court explained, "The amount, if any, as later determined at trial, when so determined, will draw interest at the judgment rate from August 1, 1996." Chambers appeals.

## ISSUES

I. Did the circuit court err in ordering that interest shall run in favor of Pingree at the judgment rate from August 1, 1996, if Chambers is later found at trial to owe money to Pingree on the promissory note?

II. Did the circuit court err in granting judgment on the note where there is a genuine issue as to whether anything is owed?

## LAW/ANALYSIS

### I. INTEREST AT THE JUDGMENT RATE

■ Chambers first argues the circuit court erred in ordering that interest should run on the note at the judgment rate from August 1, 1996. We agree.

■ Interest at the post-judgment rate does not begin until a judgment is entered in a sum certain. *See Babb v. Rothrock,* 310 S.C. 350, 426 S.E.2d 789 (1993) (holding post-judgment interest began to run from the date the master established a final judgment amount). To date, no judgment has been entered upon which interest could accrue. The court did not enter summary judgment in any certain amount; rather, it declared interest at the judgment rate would accrue retroactively in the event the holder of the note prevailed at trial.

■ Pursuant to *SSI Medical Services, Inc. v. Cox,* 301 S.C. 493, 392 S.E.2d 789 (1990),[3] the circuit court stayed collection of any amount due under the promissory note. The purpose of post-judgment interest, however, is "to penalize non-payment of a judgment by a judgment debtor." *Sears v. Fowler,* 293 S.C. 43, 45, 358 S.E.2d 574, 575 (1987). It would be paradoxical to postpone collection of a judgment, yet penalize a party for not paying it promptly. *See Casey v. Casey,* 311 S.C. 243, 245–46, 428 S.E.2d 714, 716 (1993) ("The running of post-judgment interest further encourages judgment debtors to pay judgments promptly. . . . We stress, however, that the statutory post-judgment interest rate applies only to money awards entered pursuant to distribution when the award is due as payable immediately. . . ."). We conclude the circuit court erred by permitting post-judgment interest to accrue beginning August 1, 1996.

## II. SUMMARY JUDGMENT ON PROMISSORY NOTE

■ Chambers next contends the circuit court erred in granting summary judgment on the note, claiming there is a genuine issue of material fact as to whether any monies are owed. We agree.

In granting partial summary judgment on the note, the court stated as follows:

The amount [due on the promissory note], *if any,* as later determined at trial, when so determined, will draw interest at the judgment rate from August 1, 1996. I therefore need not hold any hearing now to determine the attorney's fees and the amount owed on the note. (Emphasis added.)

A promissory note, however, is "[a]n unconditional written promise, signed by the maker, to pay absolutely and at all events a *sum certain* in money, either to the bearer or to a person therein designated or his order, at a time specified therein, or at a time which must certainly arrive." Black's Law Dictionary 1214 (6th ed.1990) (emphasis added). By

---

**3.** "[W]hen summary judgment for the plaintiff on its claim is otherwise appropriate, we view it as proper to grant the motion despite the presence of a meritorious counterclaim. However, in order to protect the defendant, we follow those jurisdictions which prevent execution by the plaintiff on this judgment until the counterclaim is fully adjudicated." *Id.* at 502, 392 S.E.2d at 794.

definition then, a party cannot establish a right to recover on a promissory note yet need a damages hearing to ascertain if any amount is due *unless* the maker acknowledges that some amount is due. In these circumstances, partial summary judgment is simply illogical.

Chambers argues the interest due to him under the agreement exceeds the amount due under the note. Although both debts were accruing interest at a 10% rate, the principal amount of the agreement was $1,080,000 compared to $330,000 due under the note, i.e., interest under the agreement was accruing nearly three times as fast as the interest under the note. Because the parties agreed interest accruing under their agreement would be credited towards the note, Chambers asserts there is at least a genuine issue of material fact regarding the amount to be credited.

Chambers also argues Pingree received over $4,000,000 in interest income from the corporation, 9% of which belongs to Chambers. Chambers offered the deposition testimony of an accountant and submitted Pingree's tax returns to prove Pingree received over $4,000,000 in interest from the corporation from 1989 through 1993.[4]

Even the circuit court's order implicitly acknowledges that a question of fact exists regarding damages; otherwise, the court would not have noted the need for a damages hearing. Because a genuine issue of material fact exists whether any amount is due under the note, the judge erred in granting Pingree's motion for summary judgment. Moreover, the order on appeal in the case *sub judice* is patently defective as an order granting summary judgment. Rule 56(d), SCRCP provides:

---

4. In his brief, Chambers argues the evidence demonstrates Pingree received $4,363,415 in interest income. Chambers apparently uses the $1,160,000 figure suggested by counsel as the appropriate number for interest income in 1989. Pingree's accountant, however, testified the 1989 interest income from Brays Island was $1,022,964. The Schedule B tax forms, which would show the exact amount of interest income from Brays Island, are not included in the record on appeal. The accountant testified Pingree reported the following interest income from Brays Island: $1,022,964 for 1989; $1,028,696 for 1990; $1,054,-393 for 1991; $1,120,326 for 1992; and zero for 1993. This totals $4,226,379, and 9% of the sum is $380,374.11, which exceeds the amount of the note.

If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It may thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

After noting two grounds Pingree offered for granting summary judgment, the trial court simply said, "I grant the motion on the first stated ground...."[5] The court neither discussed whether a genuine issue of fact existed nor made any findings of fact. Consequently, there are no facts that would be deemed established at trial. *See* Rule 56(d), SCRCP. It is antithetic to our concept of summary judgment to grant such a motion only to have the facts re-litigated at a subsequent trial. The trial court erred by granting partial summary judgment on the promissory note.

## CONCLUSION

For the foregoing reasons, the decision below is

**REVERSED and REMANDED.**

CONNOR and STILWELL, JJ., concur.

---

**5.** The first ground was as follows: "That the Court erred in failing to grant summary judgment to the Defendants on their Counterclaim for the promissory Note given by Plaintiff to these Defendants on the grounds that notwithstanding the Court's note that the Plaintiff, if successful, could set off any amount he owed on said Note against any verdict he might achieve, the Defendants are entitled to judgment on the Note at this time in order that interest and costs may run thereon from the date of judgment. The Note is due and owing, is past due, demand for payment has been made and refused, and Defendants are informed and believe they are entitled to judgment thereon at this time[.]"